James W. ROGERS, Appellant,

v.

UNITED STATES, Appellee.

No. 12702.

District of Columbia Court of Appeals.

Argued Jan. 16, 1979.

Decided Aug. 22, 1980.

* Denotes merits division.

Lois R. Goodman, Washington, D. C., for appellant.

Paula J. Page, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was filed, and John A. Terry, Michael W. Farrell and Judith Hetherton, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN and MACK, Associate Judges, and WEBBER, Associate Judge, Superior Court of the District of Columbia.*

WEBBER, Associate Judge:

A jury found appellant guilty of carrying a dangerous weapon (CDW) in violation of D.C.Code 1973, § 22–3204, and possession of a prohibited weapon (PPW) in violation of D.C.Code 1973, § 22–3214(b).[1] The trial court sentenced appellant to a term of imprisonment of seven to twenty–five years for carrying a dangerous weapon and to a concurrent term of imprisonment of one to three years for possession of a prohibited weapon.

Appellant now challenges the convictions and sentences. He claims principally that the trial court erred (1) in refusing to order a mental examination of government's wit-

---

\* Sitting by designation pursuant to D.C. Code 1973, § 11–707(a).

1. Appellant was also tried on the charge of assault with a dangerous weapon, D.C.Code 1973, § 22–502. However, the jury was unable to reach a verdict on the assault charge and a mistrial was declared as to that count. The government subsequently dismissed the charge.

ness Jeanelle Magnum; (2) in unduly restricting appellant's right to cross-examine both Magnum and Julius Jackson, another government witness; (3) in refusing to permit appellant to introduce his medical records regarding his back; and (4) in imposing an enhanced sentence for the CDW charge where the circumstances did not warrant an enhanced sentence.[2]

For the reasons discussed below, we reject the first three of these arguments. However, we conclude that the trial court did err in imposing an enhanced sentence.

Appellant also argues that the trial judge erred in not ordering the government to produce impeachable convictions of the government's witnesses in accord with his request and this court's decision in *Lewis v. United States*, D.C.App., 393 A.2d 109 (1978), *aff'd on rehearing*, D.C.App., 408 A.2d 303 (1979). It is unclear, however, from this record whether any such convictions existed or, if they did exist, whether the government had knowledge, accessible to the prosecutor, of their existence. To clarify the record, the trial court on remand should utilize the procedures prescribed by this court in *Lewis* as hereafter discussed in the section entitled Impeachable Convictions. Accordingly, we remand for further proceedings.

I.

The government's evidence indicated the following sequence of events resulting in appellant's arrest. On the evening of October 21, 1976, the complainant Julius Jackson returned from work to his apartment at 941 Ninth Street, N.W. When he arrived he found Jeanelle Magnum, Linda Jackson, and appellant inside the apartment drinking liquor and smoking marijuana.[3] Mr. Jackson asked the others to leave the apartment. He also asked appellant for a sum of money which appellant owed him for rent and liquor. When appellant denied having any money, appellant and Mr. Jackson began to argue. The argument became more heated over the next several minutes, finally resulting in a fight between Jackson and appellant in the hallway outside the apartment. After the fighting subsided, Jackson found himself slashed. He managed to make his way outside the building and then passed out.

Two officers from the Metropolitan Police Department responded to a radio run describing a cutting at 941 Ninth Street. They found Jackson lying unconscious in front of the building, bleeding heavily from several cuts around his neck and head. While an ambulance crew was removing Jackson from the scene, one of the officers sought a description of the assailant from Jeanelle Magnum and another eyewitness. They gave the officer appellant's name and description and indicated where appellant had gone after the incident. The officers drove to a site about five blocks away and found appellant knocking on the window of a building. The officers left their car and told appellant that they wished to speak to him.

As appellant walked toward the officers, he reached into his pocket and dropped a shiny metallic object into the gutter. One of the officers recovered the object, which proved to be a boxcutter. Appellant disavowed any connection with the implement. He also denied any involvement in the inci-

---

**2.** Appellant presents three other assertions which merit little discussion. He argues that the trial court erred in wrongfully denying production of certain materials under the Jencks Act, 18 U.S.C. § 3500 (1976). We conclude that no such error occurred. The material sought by appellant was not discoverable under the Jencks Act because it fell outside the purview of the statute. *See Goldberg v. United States*, 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976). Appellant also argues that the evidence was insufficient to support his conviction on either the CDW count or the PPW count because the government failed to prove the necessary intent. We find this argument to be wholly without merit. Finally, appellant argues that the court erred in failing to give an instruction that appellant was permitted to carry a weapon while moving from one residence to another. There is no evidence to support such an instruction.

**3.** Appellant had been sharing Mr. Jackson's apartment for two weeks following his eviction from another apartment in the building for nonpayment of rent.

dent outside Jackson's apartment, insisting instead that he had been drinking with friends at Ninth Street and New York Avenue at the time in question. The police then arrested appellant.

## II.

We first explain why we are not persuaded by appellant's assertions of error in the conduct of the trial itself. These assertions raise questions about the trial court's finding of competence of a government witness, its limitation of cross–examination by defense counsel, and its exclusion of certain medical records. We then discuss appellant's persuasive argument regarding the enhanced sentence imposed by the trial court for the CDW charge and note the possibility of impeachable convictions to be considered on remand.

### A. *Competence of Jeanelle Magnum*

First, appellant argues that the trial court erred by not ordering a psychiatric examination of Jeanelle Magnum prior to ruling that she was competent to testify. Before Magnum testified for the government, she was examined by counsel and the court to determine her competence to testify. She stated that she had spent some time at St. Elizabeths Hospital, that she had undergone treatment for alcoholism at D.C. General Hospital, and that she occasionally used narcotics, though she had not used any drugs either on the night of the incident in question or during the trial. Appellant claims that under these circumstances it was error for the trial court to rule, without any further examination, that Magnum was competent to testify.

■ This court has declared that [i]t is within the discretion of the trial judge to order a psychiatric examination of a witness for the purpose of determining competency to testify or to aid the jury in its assessment of a witness' credibility. [*Ledbetter v. United States*, D.C. App., 350 A.2d 379, 380 (1976), *citing United States v. Benn*, 155 U.S.App.D.C. 180, 183, 476 F.2d 1127, 1130 (1972).]

In determining whether a mental examination is necessary, the trial court must balance the potential evidentiary advantage against the dangers of an unwarranted invasion of privacy posed by such examinations. *Ledbetter v. United States, supra* at 380. There may be potential harassment resulting therefrom and there is also the likelihood that witnesses may be deterred from coming forward.

■ We note that the District of Columbia Circuit has ruled that a presumption exists against ordering mental examinations. *United States v. Butler*, 156 U.S. App.D.C. 356, 359, 481 F.2d 531, 534 (1973). That court has also stated that a trial court's ruling on a witness' competency should not be disturbed unless the record provides "unmistakable evidence that the trial court's impressions are defective." *United States v. Heinlein*, 160 U.S.App.D.C. 157, 163, 490 F.2d 725, 731 (1973). Here the trial court had the opportunity during the voir dire examination to observe Magnum. We find no abuse of discretion on this record.

### B. *Limitations on Cross–Examination*

Second, appellant argues that the trial court committed reversible error by unduly restricting his right of cross–examination. In particular, he claims that he was denied the opportunity to cross–examine (a) Jeanelle Magnum about her stay at St. Elizabeths Hospital several years earlier and (b) Julius Jackson about his drug use preceding and following the offense.

■ The opportunity to cross–examine witnesses is a fundamental right in our system of justice. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347 (1974). Nevertheless, regulation of the extent and scope of cross–examination lies with the discretion of a trial judge. *Best v. United States*, D.C.App., 328 A.2d 378 (1974). We have noted that the trial court "may always limit cross–examination . . . to prevent inquiry into matters having little relevance or probative value to the issues raised at trial" without committing error. *Springer v. United States*, D.C.App., 388

A.2d 846, 854–55 (1978). In the time–frame of the circumstances here, we conclude that the trial court correctly disallowed cross-examination of Magnum regarding her hospitalization, and that this issue was not relevant to her testimony.

■ Likewise, we find no error in the trial court's refusal to permit additional inquiry into Jackson's drug habits in the months before and after the incident in question. Appellant's defense counsel was allowed to ask Jackson whether he was under the influence of preludin at the time of the offense, to which he answered "no." Given the highly inflammatory nature of an allegation that a witness is a drug user, a trial court must exercise discretion concerning the proper scope of examination. Drug habits are generally a collateral issue unless an evidentiary foundation can be established that the witness was using drugs at the time of the incident. *See, e. g., United States v. Leonard,* 161 U.S.App.D.C. 36, 53, 494 F.2d 955, 972 (1974); *United States v. Kearney,* 136 U.S.App.D.C. 328, 420 F.2d 170 (1969). We find no abuse of discretion by the trial court in this respect.

## C. *Exclusion of Medical Records*

■ Third, appellant argues that the trial court erred in *excluding medical records* which he sought to introduce in support of his claim of self–defense. According to appellant, this evidence was necessary to corroborate his testimony that, because of a bad back, he needed a weapon to defend himself from assault by the complainant, an alleged karate expert. We note, however, that appellant himself testified, without contradiction, that he suffered from a bad back and had received instructions from a doctor to avoid straining it. Any additional evidence would have been merely cumulative. Accordingly, we reject appellant's assertion of error on this point, and we need not decide the merits *vel non* of appellant's self defense theory.

4. The record in the present case indicates that appellant filed a pretrial motion for discovery and inspection, which included a request for

## D. *The Enhanced Sentence*

■ Before imposing sentence on appellant for the CDW charge, the court inquired as to whether appellant could, because of prior felony convictions, receive an enhanced sentence under D.C.Code 1973, § 22–104a. At that time the government took the position that the provisions of that section were available for enhanced sentencing on this count. The government now concedes, however, that the provisions of § 22–104a were *not* properly available because the sentences for appellant's two prior felony convictions were imposed on the same day. Section 22–104a(b)(2) states in pertinent part that

a person shall be considered as having been convicted of two felonies if his initial sentencing under a conviction of one felony *preceded* the commission of the second felony for which he was convicted. [Emphasis added.]

Accordingly, the imposition of an enhanced sentence was improper, and this case must be remanded for resentencing.

The remand of the case will also give the trial court the opportunity to comply with the mandatory provisions of D.C.Code 1973, § 23–111(2)(b). This section requires the trial court to ask appellant if he admits his previous convictions and to inform him that failure to challenge any such conviction before imposition of sentence would preclude later reliance on the invalidity of such conviction in attacking the sentence. *See Smith v. United States,* D.C.App., 356 A.2d 650 (1976).

## E. *Impeachable Convictions*

■ *Lewis v. United States, supra* held that a prosecutor has a duty, as a matter of due process under the line of cases beginning with *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to produce at trial, upon request, all impeachable convictions of government witnesses.[4] In discussing that duty, this court stated:

the criminal records of all government witnesses. As part of its response to that motion, the government stated (a) that neither Super.Ct.

Procedurally, on remand, the trial court initially should inquire as to whether the government, at the time of trial, actually had knowledge, accessible to the prosecutor, that a government witness . . . had a prior criminal conviction or delinquency adjudication. . . . If the trial court concludes that the government had no knowledge of a prior conviction or adjudication, that will end the inquiry.

If it turns out that the government did know of a witness's criminal conviction or delinquency adjudication, the court shall make additional findings as to (1) whether the conviction could have been used at trial for impeachment given the criteria in D.C.Code 1973, § 14–305, and if so, (2) whether the conviction had been suppressed within the meaning of *Brady*.[5] If the court finds such suppression, it shall then (3) apply the appropriate test of materiality to the outcome and make related findings. [*Lewis v. United States, supra* at 118.]

The record here is insufficient to determine whether any impeachable convictions exist, or whether they fall within the ambit of *Lewis.* Accordingly, on remand for resentencing, the trial court should conduct the appropriate *Lewis* inquiry.

*So ordered.*

---

Cr.R. 16 nor *Brady v. Maryland, supra,* mandated pretrial disclosure of such convictions, and (b) that in any event "the Government has no evidence of a criminal conviction of any of the witnesses, nor any reason to believe that any of the witnesses have [*sic*] been convicted of a criminal offense."

5. We point out that, as stated in *Lewis*:
   If all impeachable convictions (of the government witnesses), known to the government, were contained in the Criminal Information

Center, and thus were readily available to defense counsel without legal process–then there was no "suppression" of *Brady* material. . . . If, however, the government had prior conviction records (accessible to the prosecutor) which were not accessible to defendant's counsel at the Criminal Information Center and were not disclosed at trial after his *Brady* request, then this evidence was "suppressed." [*Id.* at 116–17; footnotes and citations omitted.]