James J. COLLINS, Appellant,

v.

UNITED STATES, Appellee.

Eddie P. BEST, Appellant,

v.

UNITED STATES, Appellee.

Kevin D. BALDWIN, Appellant,

v.

UNITED STATES, Appellee.

Nos. 83–474, 83–523 and 83–771.

District of Columbia Court of Appeals.

Argued Sept. 20, 1984.

Decided Feb. 6, 1985.*

Amended Opinion Filed April 8, 1985.

---

* These cases were decided on February 6, 1985, and issued in slip opinion form. The opinion is hereby amended to amend footnote 13 and renumber it as footnote 9, to renumber former footnote 9 as footnote 10, to insert a new footnote 13, and to delete Part IV–C. The disposition has been consequently changed to affirmance on all claims.

Edward Gross, Washington, D.C., for appellant Collins.

Randy Hertz, Public Defender Service, Washington, D.C., with whom James Klein and John P. Dwyer, Public Defender Service, Washington, D.C., were on the brief for appellant Best.

Thomas K. Clancy, Washington, D.C., for appellant Baldwin.

Helen M. Bollwerk, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Mary Ellen Abrecht, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before PRYOR, Chief Judge, and NEBEKER and ROGERS, Associate Judges.

ROGERS, Associate Judge:

Appellants appeal their convictions by a jury of armed robbery, D.C.Code §§ 22–2901, –3202 (1981 & Supp.1984), and appel-

lant Collins appeals his conviction of carrying a pistol without a license, *id.* § 22–3204. They assign as error the trial court's refusal to order a competency examination of the complainant and to allow cross-examination about the complainant's alleged psychiatric treatment and prior arrest for gun possession. Appellants Baldwin and Collins also assign as error the denial of a motion for discovery of the witness' psychological and psychiatric records, and appellant Collins contends the trial court erred in denying his motion to suppress the lineup and in-court identifications. We find these claims unpersuasive and affirm.

## I

Sherlock Muirhead testified that on April 27, 1982, around 3 p.m., while he was standing near Kennedy Street and Georgia Avenue, N.W., three men drove up in a car, one of whom (Collins) got out of the car, pointed a gun at him, and ordered him into the car. A second man (Best), whom Muirhead recognized as "Fat Scrapper," drove the car while Collins continued to point the gun at Muirhead. During the drive, Collins took forty-five dollars ($45) from Muirhead's pockets and a third man (Baldwin) removed Muirhead's watch from his wrist. Collins also asked the others whether they should kill Muirhead. Baldwin responded that he did not care; Best said they should let Muirhead go since he would not tell the police. Muirhead was let out of the car at Illinois and Georgia Avenues, and he called the police, giving a description of the three men and the car, as well as the license plate number.

Approximately three hours later, the police found Collins standing next to the car Muirhead had described. As the police approached, Collins tossed a loaded gun into the bushes, which Muirhead later identified as similar to the gun which Collins had pointed at him. While the police were speaking to Collins, Baldwin, who fit the description given by Muirhead, joined Collins. When the police asked them about the robbery, Collins denied that he and Baldwin had been at Georgia Avenue and Kennedy Street that day. Both Collins and Baldwin were arrested; Muirhead's watch was found on Collins. Best was arrested several weeks later, on a warrant, while he was walking with Baldwin.

· The defense claimed that Muirhead had fabricated the robbery. Collins testified he had done repair work on Muirhead's car, and Muirhead never fully paid him. When he saw Muirhead on April 27, he approached him about the payment, and Muirhead pulled out a gun. Collins grabbed the gun and asked Muirhead when he was going to pay for the repairs. Muirhead began acting "fidgety," so Collins hit him in the face, knocking him down. Muirhead then said he would pay the following Friday, and gave Collins his watch, several bags of marijuana and two bags of aluminum foil as collateral for the debt. Collins returned to his car, and drove off with Baldwin.

Best testified he had no recollection of what he had done on April 27th. He admitted knowing Muirhead but claimed he did not know Collins. Baldwin did not testify. In rebuttal, the government offered evidence to show that Muirhead had not registered a car in the District of Columbia between 1980 and the time of trial.

## II

Appellants filed pretrial motions for a psychiatric examination of Muirhead to determine his competency to testify at trial and for discovery under *Brady v. Maryland*[1] of his psychological and psychiatric records. Attached to the motion for a competency examination was an affidavit of Ms. Sheffield, defense counsel for Best, and a letter from a psychologist suggesting hypothetically, on the basis of what Ms. Sheffield had related, that Muirhead might suffer from schizophrenia or a neurological disorder. In her affidavit, Ms. Sheffield characterized Muirhead's behavior during

---

1. 373 U.S. 83, 87–88, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215 (1963).

two interviews while he was in jail on charges in another case as "hyperactive," "easily distracted" and "very suspicious of everyone." She also stated that Muirhead had said he "had seen many doctors [psychiatrists] . . . and that the doctors seemed to think he was crazy," and he had "been told by the doctors to take thorazine" but refused. Appellants alleged in their *Brady* motion that Muirhead had undergone at least one psychiatric or psychological evaluation in connection with a 1978 juvenile commitment, which found he was suffering from a mental illness. In addition, they alleged that Youth Center staff who were conducting a study pursuant to 18 U.S.C. § 5010(e) in October 1982 (as a result of Muirhead's conviction for armed robbery) thought Muirhead was suffering from severe and acute mental illness, and that psychiatric or psychological reports would be generated as a result of his evaluation.

■ The motions were denied on December 17, 1982 after a hearing and an *in camera* inspection by the motions judge of Muirhead's juvenile social files and § 5010(e) study. Appellants renewed the motion for a competency examination before the trial judge who, after *in camera* review of the records, reached the same conclusion as the motions judge, finding no indication in the documents to raise any questions about Muirhead's competency.[2] Appellants contend on appeal that in view of their proffer, they met the "red flag" (of material impact on issue of competency) test of *United States v. Crosby,* 149 U.S. App.D.C. 306, 307, 462 F.2d 1201, 1202 (1972), and that where a witness is the key witness for the prosecution, a stricter standard of competency is required, particularly when there are no "strong indications of

reliability" and no corroboration of a witness' testimony.

■ The decision whether to order a psychiatric examination of a witness to determine his competency or to aid the jury's assessment of credibility is a matter within the trial court's discretion. *United States v. Benn,* 155 U.S.App.D.C. 180, 184, 476 F.2d 1127, 1131 (1973); *United States v. Crosby, supra,* 149 U.S.App.D.C. at 307, 462 F.2d at 1202; *Hilton v. United States,* 435 A.2d 383, 387 (D.C.1981). Because such an examination has the potential to impinge upon a witness' right to privacy and to harass a witness, a presumption exists against ordering mental examinations. *Rogers v. United States,* 419 A.2d 977, 980 (D.C.1980) (citing *United States v. Butler,* 156 U.S.App.D.C. 356, 359, 481 F.2d 531, 534 (1973)). A trial court's ruling on a witness' competency should not be disturbed unless the record provides "unmistakable evidence that the trial court's impressions are defective." *Hilton, supra,* 435 A.2d at 388; *Rogers, supra,* 419 A.2d at 980. *See also Ledbetter v. United States,* 350 A.2d 379, 380 (D.C.1976) (absent clear error, this court cannot change the trial court's balancing of the possible evidentiary advantage against the invasion of a witness' privacy). We find no such evidence.

■ Our *in camera* review of the records examined by the motions judge confirms that Muirhead had not been found to suffer from a mental illness. In exercising his discretion, the motions judge could reasonably rely on the expert views in the records rather than on counsel's observations and a psychologist's tentative views based on counsel's description. Further, the description of Muirhead's behavior in counsel's affidavit is consistent with the

---

**2.** The government states that under the law of the case doctrine, *Kritsidimas v. Sheskin,* 411 A.2d 370, 371 (D.C.1980); *Jenkins v. United States,* 284 A.2d 460, 463–64 (D.C.1971), only the motions judge's rulings are properly before us. Nevertheless, the government suggests that this court may consider the trial judge's rulings because he made his own findings and the record

as a whole supports the motions judge's ruling. We agree, and accordingly, do so. *Cf. Rushing v. United States,* 381 A.2d 252, 257 (D.C.1977). We note, however, that additional information was proffered to the trial judge which was not made available to the motions judge. *See* Part III.

conclusion in the records about his behavior and personality. Muirhead also gave sufficiently detailed and accurate descriptions of the alleged robbers to enable the police to identify Collins and Baldwin, indicating an ability to observe and report. The fact that he was the only eyewitness to the robbery is insufficient on the record before us to overcome the presumption against ordering a competency examination for a witness. *Hilton, supra,* 435 A.2d at 387–88; *Albany v. United States,* 377 A.2d 1145, 1146 (D.C.1977).

■ In seeking production under *Brady v. Maryland, supra,* 373 U.S. at 87–88, 83 S.Ct. at 1196–1197, of records indicating that Muirhead had received some type of psychological treatment in the past, appellants rely on *Davis v. Alaska,* 415 U.S. 308, 318–20, 94 S.Ct. 1105, 1111–12, 39 L.Ed.2d 347 (1974). As the government points out, to come within *Davis v. Alaska, supra, "a fortiori* the material to which [appellants] seek access must in fact exist." The juvenile social file and the § 5010(e) study are not public documents in possession of the prosecutor; the former is a confidential court record, D.C.Code § 16–2332 (1981), and the latter is a presentence report prepared for the court subject to limited disclosure, Super.Ct.Crim.R. 32(b)(3) (a study conducted pursuant to 18 U.S.C. § 5010(e) (1982) is a "presentence investigation" and subject to limited disclosure to the defendant prior to sentencing). Moreover, the *in camera* records do not indicate that Muirhead suffered from, or had received treatment for, a mental illness. Nor do we find the records contained exculpatory informa-

tion. *See United States v. Akers,* 374 A.2d 874, 876 (D.C.1977) (affirming denial of defendant's request to discover material in police officer's personnel file on grounds immaterial to issue of guilt or innocence and not needed to prepare defense); *cf. Reed v. United States,* 379 A.2d 1181 (D.C.1977) (court withheld police officer's notes after *in camera* inspection on ground not discoverable). The cases on which appellants rely are unpersuasive since the records in those cases indicated that the witness had received treatment for a mental illness.[3]

Accordingly, we hold the motions judge did not abuse his discretion in refusing to order a competency examination of the complainant and in refusing to produce the juvenile social file and 5010(e) study.

## III

Appellants also claim that the trial judge erred in refusing to allow them to cross-examine Muirhead regarding his alleged psychiatric treatment because their proffer of Muirhead's alleged admissions of his mental illness on two occasions provided an adequate predicate for cross-examination. They rely on this court's opinions which focus on the significance of allowing broad cross-examination where the government's case depends upon a single eyewitness,[4] and on federal circuit court opinions which hold that mental incapacity is relevant to credibility, especially when the government's case may stand or fall on the jury's belief of one witness.[5]

3. *See United States v. Lindstrom,* 698 F.2d 1154, 1163–64 (11th Cir.1983); *United States v. Society of Indep. Gasoline Marketers of Am.,* 624 F.2d 461, 469 (4th Cir.1980), *cert. denied, Kayo Oil Co. v. United States,* 449 U.S. 1078, 101 S.Ct. 859, 66 L.Ed.2d 801 (1981); *State v. Wright,* 29 N.C. App. 752, 225 S.E.2d 645, 646 (1976).

4. *Goldman v. United States,* 473 A.2d 852, 856–57 (D.C.1984), and cases cited therein; *Coligan v. United States,* 434 A.2d 483, 485 (D.C.1981); *Springer v. United States,* 388 A.2d 846, 857 (D.C.1978).

5. *United States v. Partin,* 493 F.2d 750, 762 (5th Cir.1974) (mental illness data can be used for broad scoped cross-examination; "the jury should, within reason, be informed of all matters affecting a witness, credibility to aid in their determination of the truth"); *Society of Indep. Gasoline Marketers of Am., supra* note 3, 624 F.2d at 468–69 (mental health key factor in determining credibility and defendant may inquire about witness' mental health); *Lindstrom, supra* note 3, 698 F.2d at 1165–66 (mental illness may tend to produce bias in witness' testimony; reversed because defense counsel denied access to records indicating mental treatment); *Sin-*

During Muirhead's testimony at trial, defense counsel for Best informed the court, out of the jury's presence, that she wished to cross-examine Muirhead regarding his past psychiatric treatment. Counsel for Baldwin indicated he also wanted to cross-examine Muirhead about his competency. Best's counsel proffered a 1981 Pretrial Services Report in which Muirhead purportedly said he had received psychiatric treatment, a comment which the report stated was verified by his guardian's daughter, although neither could provide any details. Baldwin's counsel proffered a 1979 Pretrial Services Report which referred to a statement by Muirhead that he had received psychiatric treatment. Collins' counsel advised that in two unrelated cases, one trial judge (Taylor, J.) had mentioned Muirhead's psychiatric treatment in an October 1981 hearing, and another judge (Scott, J.) had commented on Muirhead's "severe mental instability" when sentencing him for armed robbery in late 1982. In the latter case, Muirhead's attorney had acknowledged Muirhead's mental problems.

The trial judge found, after an *in camera* review of Muirhead's juvenile social records and § 5010(e) study, that Muirhead had not previously undergone psychiatric treatment, only psychological evaluations. Based on all the evidence before him, including Muirhead's testimony during a pretrial motion to suppress the lineup identification and the testimony of an attorney who described Muirhead's conduct at the lineup as "inappropriate," [6] the trial judge concluded, "I don't see anything based upon ... his demeanor on the witness stand that suggests he has any psychological malady. He may be a very assertive, aggressive, street-wise person, but I don't see where he has any psychological problems." Accordingly, he refused to allow *voir dire* or cross-examination of Muirhead regarding his psychological problems. Appellants maintain that the trial judge overstepped his bounds by weighing the evidence, a task for the jury. *Washington v. United States*, 461 A.2d 1037, 1038 (D.C. 1983) (*in limine* ruling which precluded liberty interest cross-examination to show bias was reversible error).

The opportunity for a defendant to cross-examine a witness is a matter of right. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Hilton v. United States, supra*, 435 A.2d at 388–89; *Springer, supra* note 4, 388 A.2d at 856–57 (*in limine* curtailment of bias cross-examination was prejudicial error). In *Springer, supra*, 388 A.2d at 854, this court pointed out that Sixth Amendment cross-examination cases cannot be reduced to a formula, but must be evaluated in light of the specific circumstances of each case. Our standard of review depends on the scope of cross-examination permitted, and where none is allowed and the jury is unable properly to perform its fact-finding function, we assess cross-examination errors by a *per se* error standard. *Id.* at 856 (citing *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931)).

We find no error by the trial judge in ruling that the necessary factual predicate had not been established to allow cross-examination about Muirhead's past mental psychiatric treatment or competency. The *in camera* records indicate that while Muirhead did not cooperate fully with the persons conducting the § 5010(e) study (he refused to take certain tests and to provide some information about himself), the psychologist found, on the basis of a clinical interview, a social history and various other reports and the 1978 juvenile evaluation, that Muirhead was not psychotic or severely neurotic and understood social expectations. Further, the affidavit and testimonial observations of counsel and

clair v. Turner, 447 F.2d 1158 (10th Cir.1971), cert. denied, 405 U.S. 1048, 92 S.Ct. 1329, 31 L.Ed.2d 590 (1972); *Ramseyer v. General Motors Corp.*, 417 F.2d 859 (8th Cir.1969); *United States v. Allegretti*, 340 F.2d 254 (7th Cir.1964), cert. denied, 381 U.S. 911, 85 S.Ct. 1531, 14 L.Ed.2d 433 (1965).

**6.** *See infra* Part IV–B.

statements of other judges are consistent with the trial judge's conclusions about Muirhead's personality and lifestyle and not proof of the fact of mental illness. *Cf. Sherer v. United States*, 470 A.2d 732, 738 (D.C.1983) (right to impeach for bad act not reduced to conviction is contingent upon showing the act occurred). The record also lends support for the judge's observation that Muirhead was confusing treatment with evaluation and examination. The *in camera* records referred to several psychological examinations and, as the trial judge observed, Muirhead's formal education was limited and, while his testimony was comprehensible and generally consistent, he had difficulty with some of the defense counsels' questions.

■ However, under the "well reasoned suspicion" standard for cross-examination, *see United States v. Pugh*, 141 U.S.App. D.C. 68, 71, 436 F.2d 222, 225 (1970), the trial judge should have allowed a few questions on cross-examination about the statements attributed to Muirhead in the Pretrial Services Agency reports and defense counsel's affidavit. The policy of allowing broad cross-examination on matters relating to a witness' credibility is followed by this court in application of the constitutional mandate, *Springer, supra*, 388 A.2d at 856–57, and cross-examination is the principal means by which to test credibility. *Davis v. Alaska, supra*, 415 U.S. at 316, 94 S.Ct. at 1110 (cross-examination can impeach (*i.e.*, discredit) witness); *Alford v. United States, supra*, 282 U.S. at 692, 51 S.Ct. at 219; *Springer, supra*, 388 A.2d at 854. In view of the defense proffer, cross-examination about whether Muirhead had ever said he had received treatment for a mental illness, and if so, what he meant, would not have been "an improbable flight of fancy" nor "utterly implausible," *Pugh,*

*supra*, 141 U.S.App.D.C. at 71, 436 F.2d at 225 ("Trial counsel in many cases cannot possibly have a foundation in fact for all questions, only a well reasoned suspicion that a circumstance might be true."). The defense theory of fabrication made questions about Muirhead's recent statements regarding his mental history material and relevant for the jury to hear. *Cf. Partin, supra* note 5, 493 F.2d at 762 ("the jury should, within reason, be informed of all matters affecting a witness' credibility to aid in their determination of the truth"); *Reese v. State*, 54 Md.App. 281, 458 A.2d 492, 498 (1983). Any questions should have been limited, however, particularly in the absence of evidence of mental illness,[7] in order to assure relevancy, *Brown v. United States*, 409 A.2d 1093, 1099 (D.C. 1979), and to avoid the prejudicial impact of false insinuations, *Pugh, supra*, 141 U.S. App.D.C. at 71, 436 F.2d at 225 ("False insinuation in a question, even followed by an indignant denial from the witness, undoubtedly leaves a trace of prejudice in the jury's mind"), as well as humiliation of the witness. *Springer, supra*, 388 A.2d at 854–55; *Pugh, supra*, 141 U.S.App.D.C. at 71, 436 F.2d at 225 (trial judge retains discretionary right to limit cross-examination on new matters first broached on cross-examination). Thus, if Muirhead had denied making the statements, the questioning would have ended, *see Sherer, supra*, 470 A.2d at 738 (impeachment on cross-examination by evidence of prior misconduct may not be provided by extrinsic evidence), but if Muirhead admitted making the statements, then counsel should have been permitted to ask a few questions to determine what he meant.

We are satisfied, however, that any error in regard to cross-examination about the attributed statements was harmless beyond

---

**7.** *See* McCormick on Evidence § 45, at 93 (E. Cleary ed. 2d. ed. 1972); 3A Wigmore on Evidence § 931–32 (Chad.Rev.1980). *Cf. Greene v. Wainwright*, 634 F.2d 272, 274–75 (5th Cir.1981) (state's key witness to be questioned in pretrial deposition about his mental condition and certain bizarre criminal actions in which he was allegedly involved); *Taborsky v. State*, 116 A.2d 433, 435–38 (Conn.1955) (new trial granted where new evidence showing mental instability (hearing voices, bells ringing, thought people trying to kill him) and four psychiatrists testified these were signs of early schizophrenia).

a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Springer, supra,* 388 A.2d at 856. Since the *in camera* records did not indicate Muirhead had suffered or been treated for a mental illness, the limited nature of any testimony about his statements to the Pretrial Services Agency and defense counsel is not testimony which involves "relevant and important facts bearing on the trustworthiness of crucial testimony." *Springer, supra,* 388 A.2d at 855 (quoting *United States v. Harris,* 501 F.2d 1, 8 (9th Cir.1974) (quoting *Gordon v. United States,* 344 U.S. 414, 423, 73 S.Ct. 369, 375, 97 L.Ed. 447 (1953)). Muirhead's identifications of appellants were based on detailed observations which he provided promptly to the police who located Collins and Baldwin within a few hours, and his testimony was partially corroborated by the fact that the car with the license plate number he provided was located by the police and his watch and a gun were found on Collins. Muirhead's general credibility was explored in detail and provided the jury with the opportunity to evaluate his testimony. He was subjected to extensive cross-examination (over 100 pages of the transcript) during which his account of the robbery, identification of appellants, and prior relationships with appellants (he knew Best by his nickname from their prior acquaintance in a juvenile facility), as well as his own activities (involving drugs and carrying a gun), prior inconsistent statements and criminal convictions were brought before the jury. Other defense evidence pointed out discrepancies in his description of the robbers and in his report to the police about how much money was stolen; the defense also called a barber who testified he had no particular memory of April 27, 1982, and thus, argued the defense, undermined Muirhead's testimony that he had gone into the barbershop to call the police about the robbery. Moreover, in closing arguments defense counsel suggested to the jury that Muirhead had psychiatric problems and imagined things, and counsel for Best argued that the government's evidence against Best consisted only of Muirhead's testimony, which was inconsistent and contradictory.

## IV

We now address appellants' other claims of error.

### A.

Appellants sought to impeach Muirhead's statements on direct examination that he had never owned a gun by introducing evidence of his arrest for gun possession. Appellants rely on *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), and *Kitchen v. United States,* 95 U.S.App.D.C. 277, 221 F.2d 832 (1955), as adopted by this court in *Sherer, supra,* 470 A.2d at 738. The trial judge held the evidence was inadmissible because the circumstances surrounding the dismissal of the charge could not be ascertained. Appellant Best contends the necessary factual predicate for the impeachment was provided by the police officer's supporting affidavit (stating that the complaining witness claimed Muirhead had a gun), citing *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), and *United States v. Morgan,* 189 U.S.App.D.C. 155, 159–60, 581 F.2d 933, 937–38 (1978) (prosecutor estopped to raise hearsay objections in later hearing as to sworn police affidavit submitted to judicial officer). We view this situation as governed by *Agnello v. United States,* 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925), not *Walder, supra* (where the prosecutor had concrete evidence to challenge the defendant's testimony). But even if there had been error in refusing cross-examination on the gun possession, it was harmless beyond a reasonable doubt, *Springer, supra,* 388 A.2d at 856, since defense counsel were allowed to question Muirhead regarding the use of a gun during a recent armed robbery of which he had been convicted.

## B.

■ We find appellants Baldwin's and Collins' claims relating to the closing argument and the lineup and in-court identification to be meritless. They contend that during rebuttal closing argument the prosecutor improperly referred to Baldwin's failure to testify in violation of his Fifth Amendment rights. *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). Five improper references are alleged, but none mentioned Baldwin by name. Since the prosecutor's remarks that neither Muirhead, the complainant, nor Collins presented other eyewitnesses were aimed at Collins, who did testify, and not at Baldwin, the remarks were not " 'manifestly intended or ... of such character that the jury would naturally and necessarily take [them] to be a comment on the failure of [Baldwin] to testify.' " *Blango v. United States*, 335 A.2d 230, 232 (D.C.1975) (quoting *Peoples v. United States*, 329 A.2d 446, 450 (D.C. 1974)); *see Boyd v. United States*, 473 A.2d 828, 833 (D.C.1984).[8] Further, even if the prosecutor's remarks on Baldwin's silence had been improper, Collins was not prejudiced.[9]

■ Appellant Collins claims the trial court erred in denying his motion to suppress the lineup and in-court identifications. He argues that the lineup was unnecessarily suggestive because he was the only one who came close to matching the description given by Muirhead to the police.[10] He relies on an attorney's testimony at the hearing on his motion that at the lineup Muirhead was "carrying on," "talking loudly to no one in particular," and behaving in an "inappropriate" manner, and on Muirhead's behavior prior to the lineup as indicating he was incompetent to make an identification. He cites *Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969) and *United States v. Trivette*, 284 F.Supp. 720 (D.D.C.1968) (witness' in-court identification held inadmissible due to her unsureness as to whether she could identify the defendant without considering prior identifications).

■ Applying the two-stage analysis of *Johnson v. United States*, 470 A.2d 756, 758 (D.C.1983) (citing *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967) and *Manson v. Brathwaite*, 432 U.S. 98, 106, 97 S.Ct. 2243, 2248, 53 L.Ed.2d 140 (1977)), and according "considerable deference" to the trial court's decision, *Banton v. United States*, 411 A.2d 975, 979 (1980), we find no error. The trial judge, after a hearing and viewing of the lineup tape, concluded the lineup was not impermissibly suggestive. He noted that Muirhead had an independent source for his identification of Collins since he had focused on the man who pointed the gun at him, that his description of the robbers' build, complexion, clothes and jewelry was sufficiently accurate to enable the police to identify Collins and arrest him a few hours later, and that he had described the car with particularity. The trial judge also found, in denying the *Brady* motion, that nothing in the attorney's description of Muirhead's behavior at the lineup suggested he had "any psychological malady." We find sufficient evidence in the record to support the trial judge's findings.[11]

Accordingly, the judgment is Affirmed.

---

8. Baldwin also claims there was no support for the prosecutor's statement in closing argument that Collins had said a crowd was present. The trial court admonished the prosecutor, and any error was harmless. *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

9. Baldwin also claims there was no support for the prosecutor's statement in closing argument that Collins had said a crowd was present. The trial court admonished the prosecutor, and any error was harmless. *Kotteakos, supra* note 8.

10. Collins did not object at the time of the lineup.

11. Collins' contention that he was eligible to be sentenced under the Young Adult Offenders Act, 18 U.S.C. § 4216 (1982), is without merit since that Act is unavailable to a defendant who has been convicted solely of offenses under the District of Columbia Code. *United States v. McDonald*, 156 U.S.App.D.C. 338, 340–41, 481 F.2d 513, 515–16 (1973), and *Atkinson v. United States*, 295 A.2d 899, 902 (D.C.1972) (Young

Adult Offenders Act inapplicable to D.C. of-    fenses).