James W. IRVING and Terrence
K. Pleasant, Appellants,

v.

UNITED STATES, Appellee.

Nos. 93–CF–1190, 93–CF–1397.

District of Columbia Court of Appeals.

Argued May 2, 1995.
Decided April 4, 1996.

Nathan I. Silver, Washington, DC, appointed by this court, for appellant Irving.

Bradford P. Johnson, Washington, DC, appointed by this court, for appellant Pleasant.

Ann M. Carroll, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Thomas C. Black, Daniel M. Zachem, and J. Patricia Wilson Smoot, Assistant United States Attorneys, Washington, DC, were on the brief, for appellee.

Before FERREN, and RUIZ, Associate Judges, and KERN, Senior Judge.

RUIZ, Associate Judge:

Appellants Terrence Pleasant and James Irving each appeal from convictions of conspiracy to commit murder and obstruction of justice. Irving challenges several evidentiary rulings and the sufficiency of the evidence to support the jury's verdict. Pleasant challenges the trial court's decision to admit evidence concerning his involvement in another criminal matter which underlies the obstruction of justice charge and restrictions on his cross-examination of the principal witness against him. Finding no error, we affirm.

## I.

Viewing the evidence in the light most favorable to the government, as we must on appeal from a conviction, the following facts were established at trial: Pleasant admitted in the presence of Irving and his cousin, Eric Pleasant, to being involved in the murder of a correctional officer, Ronald Richardson. Shortly thereafter, Pleasant was arrested and held on charges arising from Richardson's murder. During a visit that Eric made to Pleasant at the jail, Pleasant asked Eric to instruct Irving to kill Michelle Watson, a witness in the Richardson murder case. Eric relayed the message during a visit with Irving, who thereupon informed Eric of his plan to learn where Watson could be found, steal a car, kill Watson, and then abandon the car.

During subsequent conversations, Irving told Eric that he had tried to learn Watson's location from a third party, but had not been successful. Eric also visited Pleasant in jail again, where Pleasant reaffirmed his desire to have Watson killed and told Eric that another person would be able to get a gun for Irving. After this meeting with Pleasant, Eric again spoke to Irving. Irving told Eric that he had obtained a description of the car Watson was driving and places where she might be found.

Pleasant subsequently decided to abandon the plan to kill Watson. He wrote to Eric asking him to tell Irving of that fact. By the time Eric relayed the message to Irving,

about four days after Pleasant had written to Eric, Irving had already gotten the message through another party.

Eric Pleasant was cooperating with agents of the Federal Bureau of Investigation. Several of Eric's conversations with Irving were recorded, including conversations during which Irving stated his intention to kill Watson as requested by Pleasant. An agent from the FBI listened to those recordings and heard Irving's stated intentions.

## II.

Prior to trial, Irving moved to suppress evidence seized during a search of his apartment on the grounds that the warrant authorizing the search was not supported by probable cause, was impermissibly vague, and named items not subject to seizure under the statute authorizing issuance of search warrants. Although over a dozen items were seized during the search, only three items were admitted into evidence: A pistol, ammunition, and a newspaper article concerning the Richardson murder and Pleasant's arrest.

■■■■ "When reviewing a challenge to a search warrant, we accord great deference to the determination of the magistrate. Our function here is only to ensure that the magistrate had a substantial basis for concluding the existence of probable cause." *Berry v. United States*, 528 A.2d 1209, 1210 (D.C. 1987). Property is subject to seizure pursuant to a search warrant if there is probable cause to believe it is either the intended instrumentality of a crime or constitutes evidence of a crime or the identity of one participating in a crime. D.C. Code § 23–521(d)(3)–(4) (1989). Before the police may seize an item during a search, it must either be particularly described in a valid search warrant or the police must have found it in plain view during the course of a lawful

search and have probable cause to believe that it is incriminating evidence. *Bynum v. United States*, 386 A.2d 684, 687–88 (D.C. 1978).

■■■■ In the affidavit forming the basis for the application for the warrant to search Irving's apartment, the officer described the offense as a conspiracy between Pleasant and Irving to murder a witness in Pleasant's upcoming trial and stated that a warrant authorizing the arrest of Irving had been issued. He averred that a witness (presumably Eric) had informed him that Irving and Pleasant were "close associates who maintain communication via telephone and written documentation such as letters and photographs." In view of those factual allegations, we think that the trial court did not err in finding probable cause to issue a search warrant authorizing seizure of documents showing a connection between Irving and Pleasant. The seizure of those items was authorized by statute, because they constituted evidence tending to establish the identity of a person participating in a crime by showing a connection between Irving and Pleasant. Hence, the search warrant was valid and sufficiently particular, in that it specified communications and other documents showing a connection between Irving and Pleasant, and not simply every document owned by Irving.

■■■■ In light of the scope of and basis for the search warrant, the newspaper article fell within the scope of the warrant because Irving's possession of it tended to establish a connection between himself and Pleasant. The pistol and the ammunition were properly seized pursuant to the plain-view doctrine. Thus, the trial court committed no reversible error in its denial of the motion to suppress the admissibility of these items based on Irving's challenge to the issuance and execution of the search warrant.[1]

---

1. Irving also contends that even if the pistol were properly seized, the trial court nonetheless abused its discretion in admitting it into evidence because the pistol found in his apartment was inoperable. Irving contends that because it was inoperable, the gun was relevant only to show propensity, which is impermissible. Alternatively, Irving contends that any probative value was outweighed by its potential for unfair prejudice.

The government argues that the gun, although inoperable, tended to show that Irving was willing and intended to execute the plan to kill Watson.

In the present case, the trial court did not abuse its discretion in admitting the pistol into evidence. Irving's possession of the pistol tended to establish that he thought he was able to

### III.

 Irving contends that the evidence was insufficient to convict him of conspiracy to commit murder. He contends that there was no agreement to commit the murder because he was not going to kill Watson until Pleasant personally—and not merely Eric as intermediary—instructed him to do so. Irving did, however, agree to become Pleasant's instrumentality for the commission of murder; the fact that there might have been a condition precedent—Pleasant's personal go-ahead—is immaterial. Irving also asserts that he did not knowingly participate in the conspiracy because he was not sure that Pleasant was the moving force behind it. The evidence was overwhelming that Irving intentionally associated himself with and adopted the plan to kill Watson; moreover, the evidence is overwhelming that Pleasant had proposed that Irving kill Watson. Therefore, regardless of any doubts Irving may have harbored about Pleasant's direct involvement in the plot, there was a conspiracy, and Irving knowingly participated in it. His role in it was far from innocent, accidental, coincidental or obtained through deception. Although Irving argues that no overt act was committed in furtherance of the conspiracy, he incorrectly discounts the fact that he took affirmative steps to locate and identify Watson.

 Irving contends, apparently for the first time on appeal, that the government failed to introduce evidence corroborating his statements to Eric concerning Irving's overt acts. Therefore, Irving argues the evidence of his statements was insufficient, citing *Opper v. United States*, 348 U.S. 84, 89–91, 75 S.Ct. 158, 162–164, 99 L.Ed. 101 (1954). Under *Opper*, uncorroborated extra-judicial statements by a defendant cannot be used to establish the "corpus delicti." *Id.* at 91, 75

S.Ct. at 163–64. We do not think that Irving's contention has merit. First, we note that it does not appear that this issue was raised below; thus, we review only for plain error. Second, the overt act requirement is not a part of the "corpus delicti" of conspiracy. The term, "corpus delicti," refers to the "body, substance or foundation of the crime." BLACK'S LAW DICTIONARY 344 (6th ed.1990). The *substance* of the crime of conspiracy is knowing participation in an agreement to accomplish an unlawful act; the requirement of an overt act is merely an evidentiary prophylactic. *See* D.C. Code § 22–105a (1989) (providing for punishment of persons who "conspire" in subsection (a), but, in subsection (b), prohibiting conviction unless an overt act is alleged and proved); *Bellanger v. United States*, 548 A.2d 501, 502–03 (D.C. 1988) (holding that proof of overt act is not required to support admission of evidence of statement of coconspirator during course of conspiracy). Thus, the rule in *Opper* has no application here. Furthermore, " 'corroborating proof is measured not by its tendency to establish the corpus delicti but by the extent to which it supports the trustworthiness of the admissions.' " *Adams v. United States*, 502 A.2d 1011, 1023 (D.C.1986) (quoting *United States v. Johnson*, 191 U.S.App. D.C. 193, 195–96, 589 F.2d 716, 718–19 (1978)). Here, there was proof (including tape recordings) not only of Irving's statements in which he purported to be trying to locate Watson, but there was also Eric's direct testimony that Irving had formulated a plan to accomplish the object of the conspiracy. There was no error, much less plain error.

### IV.

 Finally, Irving argues that there was insufficient evidence to convict him of ob-

---

carry out the plan to kill Watson, and therefore that he intended to conspire to kill Watson and obstruct justice. *See Coleman v. United States*, 379 A.2d 710, 712 (D.C.1977) (holding that defendant's "prior possession of the physical means of committing the crime is some evidence of the probability of his guilt, and is therefore admissible"). The fact that the gun turned out to be inoperable went to the weight of the evidence and not its admissibility. Although the possession of the gun may have had some tendency to

show a propensity toward violence, we have held that in the case of simple gun possession, the tendency is attenuated. *See Martin v. United States*, 606 A.2d 120, 132 (D.C.1991); *Ali v. United States*, 581 A.2d 368, 375 (D.C.1990), *cert. denied*, 502 U.S. 893, 112 S.Ct. 259, 116 L.Ed.2d 213 (1991). Therefore, the trial court did not abuse its discretion in finding the probative value of the gun was not outweighed by the potential for undue prejudice.

struction of justice. D.C. Code § 22–722(a) (1995 Supp.) provides, in pertinent part:

A person commits the offense of obstruction of justice if that person:

. . . . .

(2) Knowingly ... by threatening letter or communication, endeavors to influence, intimidate, or impede a witness ... in any official proceeding....

▬▬▬ Irving contends that because there was no proof that he either communicated or meant to communicate any threat to Watson, the evidence was insufficient to convict him of obstruction of justice. *See United States v. Smith,* 337 A.2d 499, 503 n. 8 (D.C. 1975) (stating that the threats proscribed in the obstruction of justice statute require that the words have "a reasonable tendency to intimidate" (quoting *United States v. De Stefano,* 476 F.2d 324, 330 (7th Cir.1973))); *United States v. Jackson,* 168 U.S.App.D.C. 198, 202, 513 F.2d 456, 460 (1975) (same). We disagree. The gist of the crime is the endeavor to interfere with the administration of justice. *Ball v. United States,* 429 A.2d 1353, 1359 (D.C.1981) (citing *Hall v. United States,* 343 A.2d 35, 39 (D.C.1975)). The use of the term "endeavor" does not require success or even an overt attempt; it merely requires that the defendant have made "any effort or essay to accomplish the evil purpose that the [statute] was enacted to prevent." *United States v. Russell,* 255 U.S. 138, 143, 41 S.Ct. 260, 261, 65 L.Ed. 553 (1921); *Jackson, supra,* 168 U.S.App.D.C. at 202, 513 F.2d at 460, (not requiring even partial success in the endeavor). If the threatening communication is part of the effort to impede the administration of justice, as long as the requisite knowledge and *mens rea* is otherwise established, the conduct is properly proscribed. *See McBride v. United States,* 393 A.2d 123, 131 (D.C.1978) (noting that the requisite intent in the obstruction of justice context may be "inferred from the context and nature of the alleged criminal conduct").

▬▬▬ An endeavor to impede a witness is easily established where the threats are directly communicated to the person whose testimony the defendant seeks to deter. However, the obstruction of justice statute may also reach threats communicated to third parties when it is clear from other evidence presented, and from the actions of the defendant, that the defendant actually sought to implement those threats. *Cf. Scutchings v. United States,* 509 A.2d 634, 639 (D.C.1986) (noting that § 22–722 prohibits a broader range of conduct than its predecessor § 22–703 (repealed December 1, 1982)). A threatening communication such as Irving's discussions about killing Watson, when part of a demonstrated and partially-implemented plan designed to realize those threats, is within the reach of the law when those threats reflect the ultimate purpose of deterring a witness from testifying. The threatening communication need not be heard by the target at whom it was directed, *McBride, supra,* 393 A.2d at 130, but need only be part of the "endeavor" the defendant has undertaken. In this sense, the reach of § 22–722 is similar to § 22–507, which requires no proof that the threats be directly communicated to or even intended to be heard by the target of the threat. *See Beard v. United States,* 535 A.2d 1373, 1378 (D.C. 1988).

▬▬▬ The government proved that Irving issued threatening communications against Watson's life in his conversations with Eric, and further proved that he took actions designed to implement those threats. The government also proved that Irving did so with the knowledge and ultimate purpose of interfering with Watson's testimony in the case against Pleasant. *See Womack v. United States,* 350 A.2d 381, 384 (D.C.1976) (identifying the knowledge requirement); *see also Pettibone v. United States,* 148 U.S. 197, 206, 13 S.Ct. 542, 546, 37 L.Ed. 419 (1893) (requiring proof that the accused knew that the witness was a witness). We are satisfied that the statutory requirement that Irving demonstrate a genuine endeavor to influence, intimidate, or impede a witness, and that the endeavor took the form of a threatening communication, has been met in this case. While idle talk without additional evidence of the active intent to deter testimony is beyond the purview of the statute, we are persuaded that the government in this case adequately established the crime of obstruction of justice.

## V.

 Pleasant attacks the trial court's admission of certain evidence linking him to the Richardson murder. As discussed above, the question is, first, whether the trial court abused its discretion in determining that the evidence was relevant to prove a fact material to the crimes charged here, conspiracy to commit murder and obstruction of justice (and not propensity to commit a crime generally) and, second, whether the trial court abused its discretion in balancing the probative value of the evidence against its potential for undue prejudice. "An evidentiary ruling by a trial judge on the relevancy of a particular item is a 'highly discretionary decision' that will be upset on appeal only upon a showing of 'grave abuse.'". *Roundtree v. United States,* 581 A.2d 315, 328 (D.C.1990) (quoting *Mitchell v. United States,* 408 A.2d 1213, 1215 (D.C.1979)). The fact that Pleasant stood charged with the Richardson murder was clearly relevant to showing that he threatened Watson's life and conspired to have her murdered for the purpose of preventing her from testifying in his trial for that crime. Pleasant focuses his attack on the potential prejudice of the evidence. However, he has failed to demonstrate that the probative value of any particular item of evidence admitted by the trial court was so clearly over-balanced by its potential for undue prejudice that the trial court erred in excluding the particular item of evidence. Therefore, we find no abuse of discretion.

## VI.

 Pleasant also contends that the trial court denied him his right to conduct cross-examination when it reviewed *in camera* military medical records regarding Eric Pleasant. He asserts that the court should have permitted defense counsel to review the records, even though the trial court found nothing in the records going to Eric's competency as a witness. Pleasant has failed to show how the present case can be distinguished from *Collins v. United States,* 491 A.2d 480, 486–87 (D.C.1985), *cert. denied,* 475 U.S. 1124, 106 S.Ct. 1646, 90 L.Ed.2d 190 (1986), in which we upheld the procedure employed here. In fact, in this case, the trial court permitted precisely the sort of limited cross-examination concerning Eric's psychiatric history that we held in *Collins* to have been erroneously denied. *See id.* at 487–88. We perceive no error here.

*Affirmed.*