James W. DOWTIN, Appellant,

Griffith D. Smith, Appellant,

and

Gregory D. Epps, Appellant,

v.

UNITED STATES, Appellee.

Nos. 02–CF–1379, 02–CF–1465, 03–CO–1472, 03–CF–173, 05–CO–191.

District of Columbia Court of Appeals.

Argued Dec. 16, 2009.

Decided Aug. 5, 2010.

 

Joanne M. Vasco, Hyattsville, MD, appointed by the court, for appellant Dowtin.

Gene R. Johnson, Marion, IN, appointed by the court, for appellant Smith.

Kenneth H. Rosenau, appointed by the court, for appellant Epps.

John P. Gidez, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time the brief was filed, and Roy W. McLeese, III, Thomas J. Tourish, Jr., and Amanda Haines, Assistant United States Attorneys, were on the brief, for appellee.

Before RUIZ and THOMPSON, Associate Judges, and KING, Senior Judge.

KING, Senior Judge:

James Dowtin, Gregory Epps, and Griffith Smith appeal their convictions stemming from the killing of Jerod Jackson, arguing *inter alia* that a videotaped statement Dowtin gave to police was admitted into evidence in violation of his constitutional right against self-incrimination. We hold that any error with respect to the admission of the statement was harmless as to Dowtin, that Epps and Smith have no standing to assert such a challenge, and that the other arguments that Epps and Smith advance are without merit. Accordingly, we affirm.

## I.

On December 22, 2000, fourteen-year-old Jerod Jackson, accompanied by Robert Pough and Donita Foxx, retrieved, from Harold Howard, a jacket that had previously been stolen from Jackson. Jackson and the others then drove away but were followed by a Chevrolet Caprice. A short time later, the Jackson vehicle crashed. Epps and Smith, the latter armed with a gun, emerged from the Caprice and chased and caught the fleeing Jackson. Epps and Smith then drove away in the Caprice, with Jackson in the car. Epps, Smith, and Dowtin later beat Jackson, and Michael Bradford, as he testified at trial, heard Epps tell Jackson he was "going to die tonight."

Dowtin, Epps, and Smith later met at 14th and T Streets, S.E., where Bradford saw shovels in the back seat of Dowtin's car, also a Caprice, and heard Dowtin say Jackson was in the trunk. Eric Johnson testified that he was in Dowtin's car when Dowtin arrived at 14th and T and that Dowtin told him to get out because Dowtin had to go somewhere; Johnson shortly thereafter saw Dowtin carrying a shovel. Epps told Dowtin to "take him," apparently referring to Jackson, "out to the railroad tracks." Smith gave Dowtin a gun, and Epps told Bradford to go with Dowtin. Harold Howard went with them as well.

Dowtin drove to a location behind a school and told Bradford and Howard to hit Jackson with a stick if he moved when the trunk was opened. Bradford thought better of continuing to participate and decided to walk to his home nearby. Just before leaving the scene, he saw Dowtin and Howard taking the apparently unconscious Jackson toward adjacent railroad tracks. A few minutes later, Bradford heard shots from behind the school.

Less than an hour later, when Bradford encountered Dowtin, Epps, and Smith on the street, Dowtin said he had killed Jackson. Later he also admitted killing Jackson to a cellmate, Kevin Gordon, who

testified at trial; in the presence of trial witness Randy McKeever; and in a video-taped statement to police, the admissibility of which is at issue here.

The videotaped statement followed interviews of Dowtin in Philadelphia and the District. Dowtin was arrested in Philadelphia on January 11, 2001, three weeks after Jackson was murdered. District of Columbia Metropolitan Police Department personnel traveled there, obtained a *Miranda* waiver from Dowtin, and conducted two interviews of him during which he denied involvement in Jackson's murder. Dowtin was brought back to the District and questioned without being provided a new *Miranda* waiver. In the course of that questioning, Dowtin admitted his involvement in the crime. He agreed to give the videotaped statement before providing a new *Miranda* waiver but actually gave the statement only after providing a new written waiver. In the videotaped statement,[1] Dowtin described making his car available for use in the killing, which Howard wanted to carry out; placing Jackson in the trunk and driving to the location behind the school; digging a hole; carrying Jackson to the hole; and shooting Jackson.

About a week after the shooting, police found Jackson's incompletely buried body near the location where he had been shot. Jackson had two gunshot wounds to the head and apparent beating injuries.

At trial, photographs of Jackson's body were admitted into evidence without objection. Dowtin repudiated his videotaped statement. He testified that he had mentioned Smith and Epps only because police

had led him to believe Smith and Epps had inculpated him. When asked whether he had any knowledge that Smith or Epps was involved in the murder, he answered, "No." Bradford's testimony included the statement that police "wanted to get him"—apparently referring to Epps—because "he beat a murder charge before." The trial court denied Epps' motion for a mistrial on this basis and twice instructed the jury to disregard the statement.

Another witness, Antonio Jacobs, testified on redirect after related cross-examination by counsel for Epps that he had been reluctant to cooperate fully with police because of "stuff that went on after" Jackson's death. Speaking outside the presence of the jury, Jacobs said that this was a reference to threats against his family. Government counsel chose not to pursue this line of questioning further, and defense counsel was forbidden by the court from doing so unless the government did so first. Counsel for Epps subsequently requested re-cross-examination of Jacobs to explore bias and motive issues related to the asserted threats, but the trial court denied that request, stating that Epps had already fully cross-examined Jacobs and had in fact shown bias and motive.

At two points in the trial, the defendants drew the court's attention to members of the audience in the courtroom: First, Epps' counsel, without seeking relief, advised the judge that a prosecutor in the audience had made faces in response to defense testimony, whereupon the judge asked that the trial prosecutor be alerted if the same colleague reappeared in the audience; and later, Smith's counsel ad-

---

1. The government introduced a version of this statement that had been redacted to remove portions implicating Epps and Smith, as required by *Carpenter v. United States*, 430 A.2d 496, 502 (D.C.1981). Dowtin, during his direct testimony, introduced an unredacted version of the statement, which he repudiated.

Smith did not object to the admission of the unredacted version, and Dowtin also testified that, as far as he knew, Smith was not involved in the killing of Jackson. The trial judge instructed the jury not to consider the statement as evidence against Epps and Smith.

vised the judge that a relative of Jackson was in the audience wearing a shirt reading "Rest in Peace [Jerod]" and possibly bearing a picture of a casket. The court directed the prosecutors to request that the shirt no longer be worn. The trial judge could not see what the person in question was wearing, and there is nothing in the record that indicates that the jury could see any such shirt.

In instructing the jury, the judge said that it could consider as an adoptive admission of Smith a conversation described by Randy McKeever, a friend of Epps' and Smith's, in which Dowtin and Epps described the events summarized *supra* and during which Smith was present but remained largely silent. During this conversation, Epps and Dowtin related, *inter alia*, Smith's involvement in the car chase and crash and in abducting Jackson and delivering him to Dowtin, who placed him in the trunk of the car. McKeever testified that Smith neither appeared surprised by what Epps and Dowtin were saying nor denied that he was involved in the ways that Epps and Dowtin described.

The jury convicted Dowtin, Epps, and Smith of conspiracy, *see* D.C.Code § 22–105a (1981); kidnapping while armed, *see* § 22–2101 (1981); first-degree felony murder while armed, *see* § 22–2401 (1981); first-degree premeditated murder while armed, *see id.;* three counts of possession of a firearm during a crime of violence, *see* § 22–3204 (1981); carrying a pistol without a license, *see id.;* possession of an unregistered firearm, *see* § 6–2311 (1981); and unlawful possession of ammunition, *see* § 6–2352 (1981).

After trial, Smith filed a motion under § 23–110 (2001) alleging that his trial counsel had been ineffective, a motion the trial court denied without a hearing on the basis that Smith's claims were "vague and conclusory." These appeals followed.

After the initial briefing and oral argument on September 11, 2007, we remanded the record with instructions that the trial court take additional testimony and make additional findings and conclusions with respect to the admissibility of Dowtin's videotaped statement in light of *Missouri v. Seibert,* 542 U.S. 600, 618, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004), and *Ford v. United States,* 931 A.2d 1045 (D.C. 2007), and determine whether, assuming Dowtin's statement was inadmissible, the admission of the statement was harmless beyond a reasonable doubt as to each appellant. The trial court followed these instructions, ruling that Dowtin's statement was both admissible and harmless as to all three defendants. The case was returned to us following the trial court's findings and conclusions dated October 7, 2008. We then directed two rounds of supplemental briefing by the parties, first on the issues considered on remand and then in light of the Supreme Court's April 2009 decision in *Corley v. United States,* ___ U.S. ___, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009), which was decided after the first round of briefs had been submitted.

## II.

All three appellants challenge the admissibility of Dowtin's videotaped statement to police on Fifth Amendment grounds.[2] We need not reach the merits of this argument in order to reject it, because any

---

**2.** Dowtin also raises the related argument that the statement was inadmissible because obtained during a period of unreasonable delay in presentment. *See McNabb v. United States,* 318 U.S. 332, 341–45, 63 S.Ct. 608, 87 L.Ed. 819 (1943); *Mallory v. United States,* 354 U.S. 449, 450–56, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). Any error in admitting the statement on this ground was harmless for the reasons stated *infra.* Dowtin does not make any other claims of error.

error in admitting the statement as to Dowtin was harmless, and Epps and Smith lack standing to challenge the admissibility of the statement.

### 1.

▬ With respect to Dowtin's convictions, assuming *arguendo* that his statement was inadmissible, any error in admitting the statement does not require us to reverse if the error was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *McCoy v. United States*, 890 A.2d 204, 211 (D.C.2006). We hold that it was.

▬ Bradford's firsthand testimony essentially duplicated the content of Dowtin's videotaped statement. In addition, Foxx, Gordon, McKeever, Johnson, Darnell Atchison, an acquaintance of the Jackson family, and Eric Johnson, an acquaintance of Dowtin's, testified about the events leading up to the killing and Dowtin's multiple admissions thereafter of having killed Jackson. In sum, Dowtin carried out virtually all the steps in this crime in the presence of witnesses, and did not hesitate subsequently to talk about what he had done to anyone who would listen. One such witness, Bradford, testified that he traveled with Dowtin to the location where Jackson was killed, was instructed by Dowtin to beat Jackson if necessary, watched Dowtin and Howard take Jackson to the location where his body was later found, heard shots from that location, and shortly thereafter heard Dowtin boast of having killed Jackson. Gordon and McKeever also testified that Dowtin had admitted the crime in their presence. In the videotaped statement, Dowtin de-

scribed placing Jackson in the trunk of his car, driving to the location of the murder, digging a hole for Jackson's body, and shooting Jackson. This statement was so cumulative of other evidence that it could not have affected the outcome. Therefore, we are satisfied that the admission of the statement challenged by Dowtin was harmless beyond a reasonable doubt.[3] Thus Dowtin's challenge to its admissibility must fail.

### 2.

▬ Whether the admission, if erroneous, of Dowtin's unredacted videotaped statement was harmless as to Epps and Smith is a closer question.[4] We may reject Epps' and Smith's challenge to the admissibility of the videotaped statement without reaching the merits of the claim, however, because they have no standing to challenge a violation of Dowtin's Fifth Amendment rights.

"No person shall ... be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V; *see also Missouri v. Seibert, supra* (holding unconstitutional under Fifth Amendment a two-step interrogation process with midstream *Miranda* warnings); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (laying out warnings to be given by police in order to comply with Fifth Amendment). This prohibition "necessarily does not proscribe incriminating statements elicited from another"; instead, "[i]t is extortion of information from the accused himself that offends our sense of justice." *Couch v. United States*, 409 U.S. 322, 328, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); *see also Miranda*, 384 U.S. at 458, 86 S.Ct. 1602 ("statements obtained *from*

---

**3.** We review de novo the issue of harmlessness. *Davis v. United States,* 564 A.2d 31, 42 (1989).

**4.** Bradford's testimony focused more on Dowtin's actions than on those of the other two

defendants; Epps and Smith did not directly carry out the killing; and Epps and Smith did not, as Dowtin did, admit their actions on multiple occasions.

*the defendant*" (emphasis added)), 460, 86 S.Ct. 1602 ("the government seeking to punish an individual" must not use "the cruel, simple expedient of *compelling it from his own mouth*" (emphasis added)); *Butz v. State,* 221 Md. 68, 156 A.2d 423, 426 (1959) (stating that the "overwhelming weight of authority" holds that a defendant may not challenge statements of a witness on grounds of compelled self-incrimination).

■ A defendant may not challenge the "extortion of information" from "another" on grounds of compelled self-incrimination. *See Couch,* 409 U.S. at 328, 93 S.Ct. 611. It follows directly, although we have not heretofore had occasion expressly to address the issue,[5] that a defendant has no such standing as to his co-defendant.[6] A number of courts in other jurisdictions have expressly held this to be the case. *See, e.g., United States v. Escobar,* 50 F.3d 1414, 1422 (8th Cir.1995) (Defendant "Keeper's *Miranda* rights are personal to him, and [co-defendants] Duarte and Escobar have no standing to assert this alleged violation."); *Raras v. State,* 140 Md.App. 132, 780 A.2d 322, 341–42 (Md.2001); *Whitfield v. State,* 42 Md.App. 107, 400 A.2d 772, 783 (Md.1979).

The two Maryland cases in particular are illustrative. Raras' co-defendant in a murder case implicated both himself and Raras in a statement obtained by *Miranda*-violative questioning. *Raras,* 780 A.2d at 341. Raras challenged his own statement as the alleged fruit of his co-defendant's improperly obtained statement. *Id.* The court viewed as settled law the proposition that "a suspect lacks stand-

ing to challenge, on *Miranda* grounds, the statement of [a] second suspect," and proceeded on that basis to hold that Raras could not challenge his own statement as the fruit of the statement he lacked standing to challenge in the first place. *Id.* at 342–43. In *Whitfield,* an inmate who had attempted escape gave police a *Miranda*-violative statement implicating himself and a guard who had provided inmates with a gun. *Whitfield,* 400 A.2d at 775. The guard "[o]f course . . . ha[d] no standing to raise the Miranda issue"—*i.e.,* could not "seek refuge under" the inmate's "constitutional umbrella"—because "[t]he privilege against self-incrimination is highly personal and may not be vicariously utilized." *Id.* at 783. In both cases, as in the instant case, a defendant was barred from challenging a co-defendant's statement implicating the would-be challenger. In both instances, the Maryland court viewed as well established the basic proposition, grounded in the principles described above, that no standing exists for such a challenge. The view of the courts in Maryland and elsewhere is squarely in keeping with the nature of the right at issue and with the language of *Miranda* and other cases in this area. The view also accords with our law denying a co-defendant standing to raise a Fourth Amendment challenge, which rests on closely similar principles. *See, e.g., Blackmon v. United States,* 835 A.2d 1070, 1074 (D.C. 2003).

■ In light of all these considerations, we now hold that a co-defendant lacks standing to challenge an asserted violation of his co-defendant's Fifth

---

5. One reason for the lack of opportunities to do so and for any uncertainty in this area of the law is that "[q]uestions of standing seldom arise as to confessions because established evidentiary rules normally permit a confession to be admitted as substantive evidence only against the maker." 2 WAYNE R. LAFAVE, ET AL., CRIMINAL PROCEDURE § 9.1(a) (3d ed. 2007).

6. Indeed, some commentators suggest that this is so irrespective of what constitutional provision is said to be violated. *See, e.g.,* 38 GEO. L.J. AM. REV.CRIM. PROC. 202 (2009).

Amendment right against compulsory self-incrimination.[7] As such, Epps and Smith have no standing to challenge, as they seek to do, the admissibility of Dowtin's unredacted videotaped statement on Fifth Amendment grounds, and their appeal on this issue fails.[8]

### III.

Appellants Epps and Smith also present numerous other challenges to their convictions that require only summary discussion. We address these in turn.

■ First, Smith argues that his trial should have been severed from Dowtin's. We review this issue for abuse of discretion. *E.g., Perez v. United States,* 968 A.2d 39, 76 (D.C.2009). The two-page argument on this point in Smith's brief lacks any legal analysis and is extremely difficult to follow. Nevertheless, Smith appears to contend that the admission of Dowtin's unredacted videotaped statement, which implicated Smith, required the trial judge to grant the requested severance, possibly because the admission of the videotape rendered Smith's and Dow-

tin's defenses irreconcilable. *See Garris v. United States,* 559 A.2d 323, 329–30 (D.C.1989). A trial court "may ... grant a severance of defendants or provide whatever other relief justice requires" if "it appears that a defendant ... is prejudiced by a joinder ... of defendants ... for trial together." Super. Ct. Crim. R. 14. In particular, "a severance should be granted unless [a codefendant's out-of-court] statement is excluded or redacted to avoid any incriminating hearsay references to the codefendant." *Garris,* 559 A.2d at 330. "If there is sufficient independent evidence of the complaining defendant's guilt," however, "then severance need not be granted." *Sams v. United States,* 721 A.2d 945, 954 (D.C.1998); *see also Perez,* 968 A.2d at 77 (finding no abuse of discretion in denial of severance because, "[m]ost importantly, ... any incriminatory inference [of codefendant's out-of-court statement as to defendant] was cumulative"). Applying these principles, we are satisfied that the evidence against Smith was more than sufficient to support the trial court's denial of the motion for severance.[9] Testimony by Atchi-

---

**7.** We note that every unconstitutional action by a police officer in the collection of evidence does not find a remedy in inadmissibility. *See Rakas v. Illinois,* 439 U.S. 128, 134 n. 3, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) ("Despite the deterrent aim of the exclusionary rule, we never have held that unlawfully seized evidence is inadmissible in all proceedings or against all persons."); *Alderman v. United States,* 394 U.S. 165, 174–75, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) ("[W]e are not convinced that the additional benefits of extending the exclusionary rule to other defendants would justify further encroachment upon the public interest in prosecuti[on].").

**8.** For the same reasons, we see no basis for Epps' or Smith's having standing to challenge any delay in the presentment of Dowtin under Super. Ct. Crim. R. 5(a). Prompt-presentment requirements are closely related to Fifth and Sixth Amendment protections against improper interrogation, *see, e.g., Everetts v. Unit-*

*ed States,* 627 A.2d 981, 990–91 (D.C.1993), and, as we hold above, Epps and Smith lack standing to assert Dowtin's Fifth Amendment right against compelled self-incrimination. Moreover, neither Epps nor Smith challenged the admissibility of Dowtin's statement in the trial court or in their initial briefs here on Rule 5(a) grounds. Finally, although we afforded all parties an opportunity, following the Supreme Court's decision in *Corley,* 129 S.Ct. 1558, to brief the question whether Dowtin was subjected to an improper delay in presentment, neither Epps nor Smith submitted a brief on that issue.

**9.** This is so despite the fact that—as we noted above in explaining that we need not reach the issue of whether admission of the unredacted videotape constituted harmless error as to Smith and Epps, *see supra* note 3—the evidence against Smith, although considerable, was not as strong as the evidence against Dowtin.

son and Bradford established that Smith chased Jackson on foot, forced him into a car, beat him, chased him in a car, was present in the car with shovels on the seat and Jackson in the trunk, and retrieved a gun for Dowtin. Dowtin's videotaped statement merely related the same events. Moreover, McKeever testified that Smith was not surprised by and did not deny Dowtin's and Epps' description in Smith's presence of Smith's extensive involvement in the crimes, and Smith's fingerprints were found on the car in which Jackson was driven to the scene of his murder. Finally, we note that Dowtin repudiated his videotaped statement at trial and that Smith has simply failed to show any irreconcilability between his defense and that of Dowtin. We find no abuse of discretion in the trial court's exercise of its broad discretion to deny severance in these circumstances.

■ Smith argues next that the photographs of Jackson's body were improperly admitted. First, there was no objection to the admission of the photographs. Moreover, the photographs were relevant evidence, the trial court did not err in admitting them, and we are satisfied that the trial court did not err in concluding that any prejudice resulting did not outweigh their probative value. *See Womack v. United States,* 339 A.2d 37, 38 (D.C.1975).

■ Smith also contends that the trial court erred by permitting the jury to consider Smith's silence during the conversation related by McKeever as an adoptive admission of Smith. A defendant's silence in the face of statements incriminating him, particularly in the presence of a nonaccomplice, is probative and admissible as an adoptive admission. *See Wilson v. United States,* 995 A.2d 174, 185 (D.C.

2010); *Robinson v. United States,* 606 A.2d 1368, 1371 (D.C.1992); *Brown v. United States,* 464 A.2d 120, 124 (D.C. 1983). Therefore, the trial court did not err in admitting this evidence.

Smith argues finally that the trial court erred by denying his post-trial § 23–110 motion without a hearing. Smith's motion was conclusory, unsupported, and did not set forth any grounds in support of a claim of ineffective assistance of counsel, *see West v. United States,* 866 A.2d 74, 83 (D.C.2005), and the trial judge did not err by denying it on the basis of the existing record before her, *see Ready v. United States,* 620 A.2d 233, 234 (D.C.1993).[10]

■ Epps, for his part, contends that his motion for a mistrial based on Bradford's remark about Epps' prior murder indictment was improperly denied. Given the trial court's immediate and repeated curative action, we are of the view that the court did not abuse its discretion in not declaring a mistrial. *See Wright v. United States,* 637 A.2d 95, 100 (D.C.1994).

■ Epps next contends that *sua sponte* relief, *e.g.,* a mistrial, should have been granted because of the claims that a colleague of the trial prosecutor made faces from the audience and that one of Jackson's relatives wore a shirt reading "Rest in Peace." There is no record evidence that such conduct occurred other than the statements of trial counsel, and we think it is significant that Epps made no motion for a mistrial when these events assertedly took place. We discern no error, much less plain error, in the fact that the court did not act sua sponte to grant relief for these incidents. *See McGriff v.*

10. Smith argues also that the evidence was insufficient to support his convictions for conspiracy, *see* § 22–105a (1981); first-degree premeditated murder while armed, *see* § 22–

2401 (1981); and felony murder, *see id.* In light of the facts adduced at trial, we find this claim meritless.

*United States,* 705 A.2d 282, 288 (D.C. 1997).

 Finally, Epps argues that he was improperly denied re-cross-examination of Jacobs. Re-cross-examination is generally a matter for the trial court's discretion but must be allowed under the Confrontation Clause where redirect has brought out new matters. *Hilton v. United States,* 435 A.2d 383, 389 (D.C.1981). Here, redirect on Jacobs' reluctance to cooperate with police followed directly from Epps' cross-examination on the same subject; redirect raised no new matters that Epps could not have explored on cross-examination in the first instance. Epps thus had no right to re-cross-examination. *See id.* Where the confrontation right is not implicated, the standard is whether the trial court abused its discretion in refusing Epps' request. *See Washington v. United States,* 760 A.2d 187, 195 (D.C.2000); *see also Hilton,* 435 A.2d at 389. The trial court found that Epps had had a full opportunity to cross-examine Jacobs, including with respect to bias and motive. Therefore, it did not abuse its discretion in refusing re-cross-examination on this basis.

In sum, Epps' and Smith's challenges on issues other than the admissibility of Dowtin's videotaped statement all fail. Therefore, because, as we have held above, any error in admitting the statement was harmless as to Dowtin and may not be challenged by Epps or Smith, we

*Affirm.*